Brett E. Lewis (*Pro Hac Vice Application Forthcoming*)
LEWIS & LIN, LLC
81 Prospect Street, Suite 8001
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326
Email: Brett@iLawco.com

*Attorneys for Dobromir Kamburov*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DOBROMIR KAMBUROV,<br><br>    Plaintiff,<br><br>vs.<br><br>AD HASH and MARTIN STOEV<br><br>    Defendants. | No.<br><br>**COMPLAINT** |

## NATURE OF THE ACTION

1. This action seeks declaratory relief pursuant to 15 U.S.C. § 1114(2)(D)(v) to establish that Plaintiff Dobromir Kamburov's acquisition and use of the domain name <AdHash.com> (hereinafter the "Disputed Domain") is not unlawful under the Anticybersquatting Consumer Protection Act ("ACPA").

## THE PARTIES

2. Plaintiff Dobromir Kamburov is a citizen of Bulgaria and resident of New Jersey, USA having an address at 174 Nassau Street, Princeton, NJ 08542.

3. Upon information and belief, Defendant "AdHash" is a Bulgarian company named AdHash Ltd with an address at 102 Bulgaria Blvd., 8-th Floor, Sofia, Bulgaria, 1680.

4. Upon information and belief, Defendant Martin Stoev is a Bulgarian individual with an address at 102 Bulgaria Blvd., 8-th Floor, Sofia, Bulgaria, 1680.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1114(2)(D)(v), and 28 U.S.C. § 2201 that Plaintiff's acquisition and use of the Disputed Domain is not unlawful under the Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d).

6. This Court has personal jurisdiction over Defendants as a result of Defendants' initiation of an administrative proceeding against the Disputed Domain pursuant to the Uniform Domain Name Resolution Policy ("UDRP").

7. Venue is proper in this District under 28 U.S.C. § 1391 (b)(2). A substantial part of the property that is subject of this action is situated in this District. Moreover, venue is proper in this district due to Defendants' voluntary submission to this Court's jurisdiction when Defendants filed a complaint with the Czech Arbitration Court (CAC) dispute resolution service concerning Plaintiff's acquisition of the Disputed Domain.

8. The Disputed Domain has its situs in this District within the meaning of 15 U.S.C. § 1125(d)(2)(C). The registrar for the Disputed Domain is GODADDY, which is not only headquartered in this District, but upon information and belief also has additional business locations in this District.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

9. Plaintiff Dobromir Kamburov and Defendant Martin Stoev are long time business partners and co-founders of AdTrader, Inc. ("AdTrader"), a digital advertising company they founded in 2014 that is the true owner of the "AdHash" trademark at the center of the instant dispute.

10. Due to a lawsuit with Google LLC and business disputes with Defendant Stoev over misused funds and company resources, as well as unpaid invoices and taxes, the AdTrader business was effectively destroyed.

11. As part of the business disputes with Defendant Stoev lies the "AdHash" trademark and business, which was a spinoff from AdTrader and created using AdTrader resources. The AdHash business currently operates at the <AdHash.org> domain name. Stoev, while CEO of AdTrader, surreptitiously, and improperly, used AdTrader's office in Bulgaria and AdTrader employees to work on development of the AdHash business.

12. When this misconduct came to light, Plaintiff Kamburov demanded that Defendant Stoev, his former business partner, account for effectively destroying the company, costing the company over half a million dollars in lost profits, and diverting company employees to build a new company *for himself*.

13. To avoid litigation, in August 2018 Stoev signed an agreement with Kamburov, detailing the creation of "new companies" and the payment to Kamburov of outstanding salaries and debts, among other details. However, Stoev never lived up to his end of the bargain and surreptitiously rolled out the new AdHash company for his own interests without paying the modest amounts to which he had committed.

14. All of these key facts were deliberately withheld from the underlying UDRP Complaint filed by Stoev on behalf of "AdHash," despite Stoev knowing that Kamburov is the registrant of the Disputed Domain.

15. The underlying UDRP Complaint contained unsworn and unsubstantiated allegations concerning the purported launch of an "AdHash" business in late 2019 – well after Respondent acquired the Disputed Domain on October 29, 2018 from its prior owner.

16. The Disputed Domain was originally registered on August 24, 2011. Plaintiff acquired all rights in and to the Disputed Domain, including its registration date, from its prior owner.

17. As of October 29, 2018, "AdHash" had no customers in the U.S., no trademark use, and no trademark application anywhere in the world, much less a trademark registration in the U.S.

18. As such, Kamburov did not *register* a domain name that was confusingly similar to a U.S. trademark that was distinctive at the time of registration, and he did not *register* the Disputed Domain at all – he acquired it from the party that upon information and belief registered it in 2011.

19. As a co-owner of AdTrader, with rights to AdHash, Kamburov's acquisition of the Disputed Domain, more than 12 months before Defendants launched the <AdHash.org> site, was also not done in bad faith, within the meaning of the ACPA.

20. As an exercise of his free speech over Stoev's misuse and mishandling of AdTrader funds, Kamburov redirected the Disputed Domain to a third party site, in protest, on or around November 28, 2019, more than a year after Stoev breached the August 2018 settlement agreement.

21. AdHash has only a handful of small customers, all of which are Bulgarian companies. AdHash has no U.S. customers.

22. Any claim that AdHash is Defendants' "work and intellectual property" is also unsubstantiated, and disputed. AdHash was created by Defendant Martin Stoev, using misappropriated intellectual property and AdTrader personnel. Stoev breached the settlement agreement with his former partner – had he not breached, he would have received sole control over AdHash. Because he breached, Stoev does not own exclusive right to the stolen intellectual property at the heart of AdHash and lacks standing to dispute the acquisition and use of the Disputed Domain, as against AdHash's co-owner.

23. AdHash was an idea conceived by Kamburov and Stoev, jointly, and later developed by Stoev clandestinely using AdTrader resources. As a principal owner of AdTrader, Kamburov has a claim to joint ownership of the AdHash name and business. Although the parties sought to settle their differences, Stoev breached his obligations under the agreement, so as to render it void.

24. Upon information and belief, Defendants' website at <AdHash.org> has virtually no web traffic and no customers. Defendants' traffic is so miniscule that websites under development would often have a higher rank and more traffic than Defendants. Accordingly, any claim that AdHash is a business with measurable goodwill, and more than a *de minimis* number of clients, is not serious. It was even less so at the time of the acquisition of the disputed domain by Plaintiff on October 29, 2018, and the rights acquired by Plaintiff dated back to 2011.

25. Defendants succeeded in registering the AdHash mark with the European Union in August 2019, but there is no goodwill in that mark in the U.S.

26. Upon information and belief, Defendants do not have any actual customers in the U.S.

27. Kamburov acquired the Disputed Domain because AdHash was the company property of AdTrader. He later used it to send a message to the only person likely to visit <AdHash.com> — Martin Stoev. The message constitutes an expression of Plaintiff's feelings concerning the manner in which Defendants destroyed AdTrader, diverted AdTrader resources to build AdHash, surreptitiously, and then breached the settlement agreement that would have formed the basis to allow Defendants to run AdHash as its own company.

28. Defendants do not own a trademark registration for AdHash in the United States.

29. Upon information and belief, Defendants make no use of AdHash in U.S. commerce and lack common law trademark rights in the United States.

30. On August 10, 2020, Defendants submitted a complaint with CAC, initiated an administrative proceeding against Plaintiff's acquisition of the Disputed Domain, and sought an order to transfer the ownership rights of the Disputed Domain to Defendants, based on Defendants' ownership of the ADHASH mark *in the European Union*.

31. The UDRP proceeding, *AdHash v. Dobromir Kamburov*, Case No. 103217 (the "Proceeding") was decided by a single CAC panelist on September 21, 2020. The Panelist issued a decision directing transfer of the Disputed Domain to Defendants.

32. The Respondent in the Proceeding has ten business days to commence an action in this district to stop the transfer of the Disputed Domain from taking place.

33. Despite the fact that Defendants had agreed to submit to the jurisdiction of the courts of this District, to decide *de novo* whether the Plaintiff's acquisition of the Disputed Domain violates Defendants' rights, under the Lanham Act, 15 U.S.C. 1125(d), the Panel did not apply Ninth Circuit law in reaching its decision.

34. In filing the Proceeding, Defendant *chose* to submit to the jurisdiction of this Court, and to have the laws of the United States, as interpreted and applied by the Ninth Circuit and the courts in this District, apply to the parties' dispute.

35. Yet, Defendant completely disregarded the laws of this Circuit in filing a Proceeding.

36. Under U.S. law, a claim for cybersquatting cannot stand, unless, *first*, a complaining party has rights under the Lanham Act, and *second*, a trademark holder's claimed rights pre-date the rights of the alleged cybersquatter's rights in its domain name. Finally, the trademark holder must establish that there was *registration* of a domain name with a bad faith intent to profit from a known trademark.

37. All three required elements are lacking in this case.

38. Upon information and belief, Defendant was aware that its UDRP Complaint needed to meet the standards not of the UDRP, but of the *Lanham Act*. It was not enough to craft a complaint that could prevail in an administrative dispute proceeding.

39. Upon information and belief, Defendants possess no common law trade or service mark rights and no rights under the Lanham Act in connection with services under the trade name, "AdHash."

40. At no point did Plaintiff offer the Disputed Domain for sale.

41. At no point has Plaintiff offered any domain name for sale.

42. After Defendant breached its obligations under the settlement agreement, on or around November 28, 2019, a year after acquiring the Disputed Domain, Plaintiff redirected it to a gay pornography site. The message was directed at Martin Stoev, not any non-existent customers.

43. Regardless, when Plaintiff acquired the Disputed Domain, he acquired all rights in and to it, including its registration date in August 2011. As such, Plaintiff's acquisition of the Disputed Domain cannot constitute the *registration* of a domain name, which is identical or confusingly similar to a trademark, which was distinctive at the time of its registration.

44. For the above reasons, Plaintiff seeks a declaration that the Disputed Domain is rightfully owned by Plaintiff.

45. In accordance with the Internet Corporation for Assigned Names and Numbers (ICANN) Policy, Plaintiff provided notice to Defendants that a lawsuit would be commenced against it concerning the Disputed Domain name within a ten-day period.

## COUNT ONE
## Declaration Under Anticybersquatting Consumer Protection Act

46. Plaintiff realleges and incorporates paragraphs 1-45 above.

47. As stated above, Defendants lack trademark rights in the United States and under the Lanham Act.

48. As such, Plaintiff's acquisition of the Disputed Domain violates no right of Defendants' under the Anticybersquatting Consumer Protection Act, 15 U.S.C. 1125(d).

49. Plaintiff did not "register" the Disputed Domain, within the meaning of 15 U.S.C. § 1125(d).  The Domain Name was registered in 2011 – eight years before Defendants ever made use of its claimed AdHash mark anywhere in the world.

50. As a result, because the Disputed Domain was registered before the Defendants ever made use of its claimed trademark, it cannot have been registered with the bad faith intent to profit off of a trademark that did not then exist.

51. In acquiring the Disputed Domain, Plaintiff did not have a bad faith intent, as provided in 15 U.S.C. § 1125(d)(1)(A)(i), to profit from any mark alleged to be owned by Defendants.

52. In acquiring the Disputed Domain, Plaintiff did not have the intent, as provided in 15 U.S.C. § 1125(d)(1)(B), to divert consumers from Defendants' online location to a site accessible under the Disputed Domain that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site.

53. In acquiring the Disputed Domain, and at no time since its acquisition, has Plaintiff offered to transfer, sell, or otherwise assign "AdHash.com" to Defendants or any third party for financial gain without having used, or having an intent to use, the Disputed Domain in the bona fide offering of any goods or services, nor is there prior conduct by Plaintiff indicating a pattern of such conduct.

54. Plaintiff has not registered or acquired multiple domain names that it knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties.

55. Plaintiff has not *registered*, trafficked in, or used a domain name that at the time the Disputed Domain was *registered* in 2011, was identical or confusingly similar to any mark alleged to be owned by Defendants.

56. Plaintiff believed and had reasonable grounds to believe that its acquisition of the Disputed Domain was lawful.

57. As required by 15 U.S.C. § 1114(2)(D), Plaintiff has given notice to Defendants of his intent to file an action to establish that Plaintiff's acquisition and use of the Disputed Domain is not unlawful under the ACPA.

## COUNT TWO
### Declaratory Judgment

58. Plaintiff realleges and incorporates paragraphs 1-57, above.

59. A dispute exists between Plaintiff and Defendants concerning Plaintiff's right to acquire and use the Disputed Domain. As a consequence of the dispute, an actual and justiciable controversy exists between Plaintiff and Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment:

(a) Declaring that Plaintiff's acquisition and use of the domain name <AdHash.com> is not unlawful under the ACPA, 15 U.S.C. § 1125(d);

(b) Declaring that Plaintiff's acquisition and use of the domain name <AdHash.com> does not constitute a *registration* with the bad faith intent to profit from any mark alleged to be owned by Defendants under the ACPA, 15 U.S.C. § 1125(d);

(c) Declaring that Plaintiff is not required to transfer the domain name <AdHash.com> to Defendants;

(d) Declaring that the Registrar GODADDY.COM LLC shall not transfer the registration for the domain name <AdHash.com> to Defendants;

(e) For such other and further relief as the Court shall deem appropriate.

Dated: October 1, 2020

                                          LEWIS & LIN, LLC

                                          By: /s/ Brett E. Lewis
                                          Brett E. Lewis (*pro hac vice forthcoming*)
                                          81 Prospect Street, Suite 8001
                                          Brooklyn, NY 11201

                                          Tel: (718) 243-9323
                                          Fax: (718) 243-9326
                                          brett@iLawco.com

                                          *Attorneys for Plaintiff*